## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

SHERINE SENEGAL                                         CIVIL ACTION

VERSUS                                                  NO. 20-544-JWD-RLB

TODD ANDERSON, ET AL.

<u>ORDER</u>

Before the Court is Defendants' Motion to Compel Additional Medical Examinations and Motion for Extension of Discovery Deadlines. (R. Doc. 18) and Defendants' proposed Order (R. Doc. 23). Defendants filed a Supplemental Memorandum. (R. Doc. 26). The motion is opposed. (R. Doc. 27). Defendants filed a Reply. (R. Doc. 30).

I.      **Background**

On or about May 8, 2020, Sherine Senegal ("Plaintiff") filed this personal injury action involving a motor vehicle collision in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, naming as defendants Todd Anderson, Ryder Integrated Logistics, Inc. ("Ryder"), and Old Republic Insurance Company (collectively, "Defendants"). (R. Doc. 1-1). Plaintiff alleges that Mr. Anderson, while operating a 2015 Freight Truck owned by Ryder, rear-ended her vehicle. (R. Doc. 1-1 at 2). Plaintiff seeks recovery for physical pain and suffering; mental pain, anguish, and distress; medical expenses; loss of enjoyment of life; and lost wages. (R. Doc. 1-1 at 2-3).

There is no dispute that Plaintiff has identified eleven treating health care providers as experts. (R. Doc. 18-1 at 2; *see* R. Doc. 27 at 3). Prior to the filing of this motion, Defendants requested Plaintiff to submit to a neuropsychological evaluation with Dr. Kevin Greve, a board-certified neuropsychologist and clinical psychologist; Dr. Archie Melcher, a board-certified neurologist; Dr. John Thompson, a board-certified psychiatrist; Dr. Everett Robert, a board-

certified neurosurgeon; and Elizabeth Martina, a certified life care planner and vocational rehab counselor. (R. Doc. 18 at 1-2).

On July 1, 2021, Dr. Mark Warner, Plaintiff's treating neuropsychologist, issued a report regarding a four-day neuropsychological evaluation of Plaintiff. (R. Doc. 18-2). Dr. Warner opined that Plaintiff suffers from (1) mild neurocognitive disorder due to traumatic brain injury and (2) psychological factors (depression, anxiety) affecting other medical conditions (headache, cervical pain, lumbar pain, thoracic pain); adjustment disorder with mixed anxiety and depressed mood; and moderately impaired functioning. (R. Doc. 18-2 at 8). Dr. Warner referred Plaintiff to Dr. Jessica Boudreaux, an adult and forensic psychiatrist, for psychiatric care and medication management of her sleep, anxiety, and depression, further recommending that she undergo recommended cognitive-behavioral treatment. (R. Doc. 18-2 at 9).

On October 10, 2021, after various discussions between counsel, Plaintiff agreed to submit to the evaluations with Dr. Robert, Dr. Melcher, and Ms. Martina, but would only agree to appear to an evaluation with either Dr. Thompson or Dr. Greve. (R. Doc. 18-12). On October 12, 2021, Defendants requested that Plaintiff appear for an evaluation with Dr. Greve on October 18-19, 2021, noting that Defendants would file a motion with respect to the proposed evaluation with Dr. Thompson. (R. Doc. 18-14). Plaintiff responded that she would not appear for the evaluation with Dr. Greve. (R. Doc. 18-15).

On October 21, 2021, Defendants filed the instant motion arguing that they are entitled to Rule 35 examinations by both Dr. Thompson or Dr. Greve because (1) Plaintiff has placed her mental and physical condition in controversy, (2) Dr. Thompson or Dr. Greve are both qualified, (3) there is good cause for the requested evaluations, (4) Defendants complied with the requirements of Rule 35(b), and (5) Plaintiff has offered no justification for refusing to submit to the requested evaluations. (R. Doc. 18-1 at 6-13). Defendants also sought extensions of the

remaining expert deadlines to accommodate the foregoing Rule 35 examinations. (R. Doc. 18-1 at 13-14).

The Court granted expedited consideration of the instant motion and ordered Defendants to file a proposed Order identifying the specific relief sought under Rule 35(a)(2)(B) and Local Rule 35 with respect to Dr. Greve and Dr. Thompson. (R. Doc. 22). Defendants filed the proposed Order. (R. Doc. 23). In the proposed Order, Defendants seek Plaintiff to submit to a psychiatric evaluation by Dr. Thompson, through videoconference, on December 1, 2021 for approximately 1.5-3 hours, with the examination consisting of (1) a clinical psychiatric interview including a personal and social history, educational and work history, medical history (including psychiatric history), and (2) an evaluation of the events which Plaintiff claims were the cause of her emotional injury, which may include an evaluation of Plaintiff's affect, mood, speech, thought process, memory, sensorium, orientation, and other mental functions. (R. Doc. 23 at 1). Defendants also seek Plaintiff to submit to an in-person neuropsychological evaluation with Dr. Greve in Metairie, Louisiana, on December 15-16, 2012, for a period of 8 hours each day to include a 1-hour lunch break and additional breaks throughout the day. (R. Doc. 23 at 1-2). The proposed evaluation will consist of a clinical interview, which will include a personal and medical history conducted by Dr. Greve and a neuropsychological test battery to be conducted by a qualified psychometrist under Dr. Greve's supervision and direction to evaluate function in the following domains: general intelligence; attention/concentration; sensation-perception; motor-praxis; language; new learning and memory; higher level cognition-executive function; emotional status; and response validity. (R. Doc. 23 at 2).

In their Supplemental Memorandum, Defendants inform the Court that "Dr. Greve's office advised that his first available appointment was December 15-16, 2021 and that there is a 4-6 week turnaround time for the production of his report." (R. Doc. 26 at 2).

Plaintiff opposes the relief sought on the basis that good cause has not been demonstrated to require Plaintiff to appear for five medical examinations, Plaintiff will face undue burden by having to travel to the examinations, and there is otherwise no good cause established for additional neuropsychological testing and a psychiatric interview. (R. Doc. 27).

## II.    Law and Analysis

### A.    Motion for Rule 35 Examination

Federal Rule of Civil Procedure 35 provides that the "court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). Such an order may be issued "only on motion for good cause and on notice to all parties and the person to be examined" and "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2). A plaintiff places his or her physical or mental condition "in controversy" by pleading he or she has sustained a physical injury through the negligence of the defendant. *See Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). "The decision as to whether or not to order an independent medical examination under Rule 35(a) rests in the court's sound discretion." *Glaze v Bud's Boat Rental, Inc.*, No. 93-1334, 1993 WL 441890, *1 (E.D. La. Oct. 21, 1993). Furthermore, "[a]lthough Rule 35 examinations may be ordered 'only on motion for good cause shown,' and use of the rule to compel such examinations is not unfettered, Rule 35(a) generally has been construed liberally in favor of granting discovery." *Grossie v. Fla. Marine Transporters, Inc.*, No. 04-0699, 2006 WL 2547047, at *2 (W.D. La. Aug. 31, 2006).

Because there is currently no Rule 35 order in this action, there is no basis under Rule 37 for compelling compliance with a Rule 35 order or awarding expenses. *See Bruce v. Baywater*

*Drilling, L.L.C.*, No. 16-168, 2016 WL 3149719, at *2 (M.D. La. June 3, 2016). Accordingly, this Order does not grant any relief under Rule 37, including an award of expenses. The Court will consider the motion and proposed Order, however, for the purposes of determining whether Defendants have established good cause for the issuance of a Rule 35 order. *See id.* at *3-4.

There is no dispute that Plaintiff's mental condition have been put at issue, that Dr. Thompson or Dr. Greve are qualified to conduct their proposed examinations, and that the instant motion is timely. While Plaintiff agrees to appear for an evaluation before either Dr. Thompson or Dr. Greve, she nevertheless asserts that Defendants have not established "good cause" for either examination. (R. Doc. 27 at 3). Plaintiff argues that the examinations would result in undue burden (in light of the time and travel involved with respect to all five evaluations requested by Defendants) and that the examinations are duplicative (in light of other sources of neuropsychological test results). The Court will address these two issues in turn.

### 1.    Undue Burden and Expense

Plaintiff argues that Defendants have failed to establish good cause for additional neuropsychological testing by Dr. Greve because the length and travel time involved to appear for the two-day examination would be unduly burdensome. (R. Doc. 27 at 3-6). In so arguing, Plaintiff calculates the total number of hours and vehicular travel required to comply with all five medical examinations sought by Defendants. To be clear, the only proposed examinations at issue in this motion are the proposed Rule 35 examinations of Dr. Greve and Dr. Thompson. Of those two examinations, only the examination by Dr. Greve would require any travel.

Plaintiff resides in Lafayette, Louisiana. The record indicates that Plaintiff has traveled outside of Lafayette to Baton Rouge and Metairie for treatment and diagnostic testing, has agreed to travel to Metairie for evaluations with Dr. Robert and Dr. Melcher, and did not previously object to the examinations at issue based on their location. (*See* R. Doc. 30 at 2).

5

Furthermore, Defendants have offered to pay for Plaintiff's reasonable expenses for travel and lodging incurred with respect to the examinations. (R. Doc. 23 at 2; R. Doc. 30 at 2).

Generally, courts will only mandate that a plaintiff "appear for examination at the place where the trial would be held—that is, at the venue selected initially by the plaintiff. This allows the examining physician to be available conveniently for testimony." *Thomas v. W&T Offshore, Inc.*, No. 16-14694, 2018 WL 501508, at *2 (E.D. La. Jan. 22, 2018) (quoting *Baird v. Quality Foods, Inc.*, 47 F.R.D. 212, 213 (E.D. La. 1969)). For an exception to be made to this general rule, courts have held that "the burden is not on the defendant to demonstrate that a satisfactory examination cannot be had a nearer locale to the plaintiff, but rather on the plaintiff to show that traveling to the examination poses undue burden or hardship." *Thomas*, 2018 WL 510508, at *2 (quoting *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 400 (S.D. Tex. 2013)).

While the Court acknowledges that the travel distance and time to appear for an examination by Dr. Greve would inconvenience Plaintiff, the record does not indicate that she will face any undue burden or hardship by travelling to Metairie for a two-day examination. On the contrary, the record indicates that Plaintiff is physically able to travel considerable distances by car, has done so on multiple occasions to treat with her own physicians, and has agreed to do so for evaluations by Dr. Robert and Dr. Melcher. Plaintiff's alleged emotional distress regarding the very act of vehicular travel has not prevented her from other long-distances trips for treatment and examinations. The travel required by an examination by Dr. Greve would pose no particular heightened level of emotional stress. Furthermore, Defendants have offered to pay for accommodations to eliminate duplicative travel time between Lafayette and Metairie. Any financial hardship caused by the travel is moot in light of Defendants' offer to reimburse travel expenses.

The Court is also satisfied that the purpose for the general rule—that the examining physician be located in the district where the trial is to be held to allow the physician to be conveniently available for testimony—is satisfied even though Metairie falls outside of the geographic scope of this district. Because his office is within 100 miles of Baton Rouge, Dr. Greve will be subject to subpoenas for trials, hearings, depositions, and the production of documents in Baton Rouge. *See* Fed. R. Civ. P. 45(c).[1]

Given the distances involved, Defendants' agreement to reimburse travel costs, and the lack of any demonstrated undue burden or hardship, the Court finds it appropriate to order the examination by Dr. Greve to take place in his office in Metairie, even though that location is outside of the geographic scope of this district. This decision is consistent with other decisions within this circuit. *See Thomas*, 2018 WL 501508, at *2 (ordering examination to occur at a location 85 miles from plaintiff's home and within district); *Ornelas*, 292 F.R.D. at 400 (ordering examination to occur at a location 100 miles from plaintiff's home and within district); *Gant v. Helix Energy Sols. Grp.*, No. 07-0618, 2007 WL 2316526, at *2 (W.D. La. Aug. 9, 2007) (ordering examination to occur at a location 45 miles from plaintiff's home even though location was outside of district); *In re Bordelon Marine, Inc.*, No. 11-1473, 2012 WL 1902576 (E.D. La. May 25, 2012) (denying motion to compel examination at a location 214 miles from claimant's home even though location was within district); *Rainey v. Wal-Mart Stores, Inc.*, 139 F.R.D. 94 (W.D. La. 1991) (denying motion to compel examination at a location 270 miles from the plaintiff's home and outside of district).

Finally, to the extent Plaintiff argues that the cumulative effect of appearing for all five medical examinations would result in undue burden, the Court likewise rejects that argument.

---

[1] It is worth noting that Plaintiff suggests that the examination take place in Lafayette, which is outside of the geographical scope of this district. Accordingly, it does not appear that Plaintiff has any specific concern with an evaluation that does not occur within the geographic scope of this district.

Foremost, Plaintiff agrees to appear to four of the five examinations sought by Defendant. Even if the Court considered the cumulative effect of all examinations (including the three examinations by Dr. Robert, Dr. Melcher, and Ms. Martina to which Plaintiff unequivocally appears to attend), the Court would nevertheless find that all five examinations sought fall within the scope of Rule 26(b)(1) and the separate and distinct examinations are not unreasonably cumulative or duplicative under Rule 26(b)(2)(C).

## 2.    Alternate Sources of Information

Plaintiff further argues that the motion should be denied because there are alternative sources of information, primarily the four-day examination already performed by Dr. Warner. (R. Doc. 27 at 5-6).

The Court finds this argument unconvincing. The Court will not require Defendants to rely on testing conducted by Plaintiff's own expert. *See Monroe v. Cooper/T. Smith Stevedoring Co.*, No. 06-933, 2008 WL 687196, at *3 (M.D. La. Mar. 10, 2008) (granting vocational rehabilitation examination where where the conclusions of the plaintiffs' vocation expert were based upon an "in-depth clinical interview" and vocational aptitude, achievement, and interest testing of Plaintiff for which the defense expert was not present); *see Johnson v. Jowin Express, Inc.*, No. 15-1862, 2016 WL 3200281, at *2 (W.D. La. June 8, 2016) (granting Rule 35 examination for neuropsychological examination despite the plaintiffs argument that the testing was unnecessary and redundant because she had already undergone neuropsychological testing by an expert of her choosing); *Jackson v. Entergy Operations, Inc.*, No. 96-4111, 1998 WL 28272, at *2 (E.D. La. Jan. 26, 1998). ("[I]t is . . . clear that a plaintiff may not avoid [a psychiatric] examination simply on grounds that other sources of information, including medical reports and depositions of plaintiff's treating physicians, are available. Indeed, when plaintiff has retained her own experts and intends to prove her claim at trial through their testimony, and

when her mental injuries will be an important component of her damages, good cause exists to permit defendant to select its own expert to examine her. Having instigated this litigation, plaintiff can neither avoid her discovery responsibilities nor preclude defendant from taking appropriate discovery.").

### 3.     The Scope of the Examinations

Having addressed Plaintiff's concerns regarding undue burden related to travel distances and time and the availability of alternate forms of information, the Court finds good cause for the proposed examinations by Dr. Greve and Dr. Thompson.

Plaintiff does not raise any other specific arguments regarding the time, manner, place, conditions, and scope of the examinations proposed by Defendants. At most, Plaintiff argues that the scope of the proposed Rule 35 examinations are "impossible for the plaintiff to ascertain" because "the defendants have not provided any description of the proposed examinations to be performed on plaintiff" by either Dr. Greve or Dr. Thompson. (R. Doc. 27 at 5-6). But Plaintiff filed her opposition on November 5, 2021, one week after Defendants submitted a proposed Order detailing the scope of the proposed examinations on October 29, 2021. (*See* R. Doc. 23). Plaintiff does not address the detailed scope of the examinations provided in the proposed Order.

Furthermore, that Dr. Greve did not provide a specific list of the proposed neuropsychological testing to be conducted does not preclude a finding of good cause. A list of tests is not required before a psychological examination can be conducted under Rule 35. *Johnson*, 2016 WL 3200281, at *2 (citing *Daigle v. Nabors Drilling USA, LP*, No. 05-336, 2007 WL 580781 (W.D. La. Feb 15, 2007); *see also Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995) ("It would serve no purpose to require [the examiner] to select and disclose the specific tests to be administered in advance of his mental examination of plaintiff.").

Here, the Court finds that the proposed Order sufficiently describes the nature and scope of the proposed examinations, including tests, that may be performed in satisfaction of the notice requirement of Rule 35(a)(2)(A) and Local Rule 35. Accordingly, the Court will require Plaintiff to appear for examinations by Dr. Greve and Dr. Thompson as sought by Defendants.

### B.    Motion for Extension of Deadlines

Defendants also seek an extension of the appropriate deadlines given the proposed examination dates and delays required for the production of reports. (R. Doc. 18-1 at 13-14; R. Doc. 26). Plaintiff does not oppose an extension of expert discovery deadlines given the relief sought by Defendants. (R. Doc. 27 at 7).

The deadline for Plaintiff to provide expert reports is November 29, 2021; the deadline for Defendants to provide expert reports is January 3, 2022; the deadline to complete expert discovery is February 28, 2022; and the deadline to file dispositive motions and Daubert motions is April 15, 2022. (R. Doc. 15). Trial is set to commence on September 19, 2022. (R. Doc. 6).

Rule 16(b)(4) of the Federal Rules of Civil Procedure allows for the modification of a scheduling order deadline upon a showing of good cause and with the judge's consent. The Fifth Circuit has explained that a party is required "to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Marathon Fin. Ins. Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 470 (5th Cir. 2009) (quoting *S&W Enterprises, LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003)).

Given the examinations authorized by this Order, the Court finds good cause to extend the parties' deadlines to provide expert reports and, to less of an extent, the deadline to complete expert discovery. The Court will not move the dispositive and Daubert motion deadline at this time to ensure that the district judge has sufficient time to resolve any such motions in advance

of trial and pretrial preparation. (*See* R. Doc. 15). The parties are encouraged to schedule expert depositions well in advance to ensure that the new expert discovery deadline is met.

III.    **Conclusion**

Based on the foregoing,

**IT IS ORDERED** that Defendants' Motion to Compel Additional Medical Examinations and Motion for Extension of Discovery Deadline (R. Doc. 18) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff, Sherine Senegal, shall submit for a psychiatric evaluation with Dr. John Thompson at Tulane University. The evaluation will be conducted via Zoom on December 1, 2021, at 1:30 p.m. and is estimated to last 1.5 hours to 3 hours. The examination shall consist of a clinical psychiatric interview including a personal and social history, educational and work history, medical history (including psychiatric history), and an evaluation of the events which Ms. Senegal claims were the cause of her emotional injury. The interview may also involve a mental status examination to evaluate Ms. Senegal's affect, mood, speech, thought process, memory, sensorium, orientation, and other mental functions. Dr. Thompson will not conduct a physical examination of the plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff, Sherine Senegal, shall submit for a neuropsychological evaluation with Dr. Kevin Greve at Jefferson Neurobehavioral Group located 2901 North I-10 Service Road East, Suite 300, Metairie, LA 70002. The evaluation is to take place on December 15, 2021, and December 16, 2021 and will commence each morning at 9:00 a.m. and conclude at 5:00 p.m. Ms. Senegal will be provided an hour lunch break and can take additional breaks throughout the day as needed. The evaluation will consist of a clinical interview, which will include a personal and medical history conducted by Dr. Greve and a battery of tests to be conducted by a qualified pyschometrist under Dr. Greve's supervision and direction. The neuropsychological test battery is designed to evaluate function in the following

domains: 1) general intelligence; 2) attention/concentration; 3) sensation-perception; 4) motor-praxis; 5) language; 6) new learning and memory; 7) higher level cognition-executive function; 8) emotional status; and 9) response validity. Dr. Greve will not conduct a physical examination of the plaintiff.

**IT IS FURTHER ORDERED** that Defendants are to reimburse Ms. Senegal for her reasonable travel expenditures to attend the examination by Dr. Greve.

**IT IS FURTHER ORDERED** that the deadlines in the Court's Scheduling Order (R. Docs. 13, 15) are extended as follows:

1.    Plaintiff's expert report deadline:          **January 3, 2022**

2.    Defendant's expert report deadline:        **February 7, 2022**

3.    Deadline to complete expert discovery:    **March 14, 2022**

All other deadlines remain unchanged.

Signed in Baton Rouge, Louisiana, on November 15, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**